**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Richmond Division)**

LATOYA HARDNEY, individually and as
Administrator of the Estate and successor in
interest to KENNETH T. SHARP, Deceased,

               Plaintiff,

v.

CITY OF RICHMOND; TODD HALL; and
DOES 1-10, inclusive,

               Defendants.

Civil Action No.: 3:25-cv-24-MHL

## PLAINTIFF'S OPPOSITION TO DEFENDANT CITY OF RICHMOND'S MOTION TO DISMISS

On March 31, 2024, City of Richmond police officers unjustifiably shot and killed Kenneth T. Sharp, a 20-year-old man who had committed no crime and did not pose a serious threat to anyone. His mother, Latoya Hardney brings seven claims against the officers and the City:

- Claim I: Unreasonable Search and Seizure – Excessive Force under 42 U.S.C. § 1983, brought against Defendant TODD HALL and DOE OFFICERS.

- Claim II: Unreasonable Search and Seizure – Denial of Medical Care under 42 U.S.C. § 1983, brought against Defendant TODD HALL and DOE OFFICERS.

- Claim III: Municipal Liability – Ratification under 42 U.S.C. § 1983, brought against Defendant CITY OF RICHMOND and DOES 6–10.

- Claim IV: Municipal Liability – Failure to Train under 42 U.S.C. § 1983, brought against Defendant CITY OF RICHMOND and DOES 6–10.

- Claim V: Municipal Liability – Unconstitutional Custom or Policy under 42 U.S.C. § 1983, brought against Defendant CITY OF RICHMOND and DOES 6–10.

- Claim VI: Battery (Wrongful Death and Survival), brought against Defendant CITY OF RICHMOND and Defendant TODD HALL.

- Claim VII: Negligence (Wrongful Death and Survival), brought against all Defendants.

In its motion to dismiss, Defendant City of Richmond ("City") challenges Claims III, IV, V, VI, and VII insofar as those claims are brought against the City. Plaintiff maintains that she has adequately alleged Claims IV and V but agrees to dismiss without prejudice Claim III, VI, and VII.[1]

Plaintiff Latoya Hardney alleges that the City of Richmond's inadequate training and its unconstitutional customs, practices, and policies led directly to the tragic and unconstitutional shooting of her 20-year-old son, Kenneth T. Sharp. Plaintiff alleges that the City itself, through deliberate indifference in its training and entrenched customs tolerating excessive force, was the "moving force" behind the deprivation of Mr. Sharp's Fourth Amendment rights. Under well-established Supreme Court and Fourth Circuit precedent, such allegations – accepted as true at this stage – plausibly establish municipal liability. A §1983 plaintiff need not prove her case in the complaint. Here, the detailed allegations are more than adequate to show an "obvious" need for better training and a persistent failure by policymakers to curb unjustified shootings, which suffice to survive a Rule 12(b)(6) motion. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). Plaintiff respectfully submits that the motion to dismiss should be denied so that these claims may proceed to discovery.

## I.    FACTS ALLEGED

On March 31, 2024. On March 31, 2024, at around 5:00 a.m., Officer Hall and Doe Officers responded to Cedar Street in Richmond, Virginia to a report of a person in a car.

---

[1] Claims VI and VII are only dropped against the City. Plaintiffs will still pursue these claims against the individual defendants.

Complaint, Dkt. No. 1 ¶ 16.[2] Officer Hall walked up to the car and observed the Decedent was asleep and posed no threat to the officer or anyone else. *Id*. Officer Hall walked back to his vehicle and spoke with another officer. ¶ 17. Then, with no police lights or siren activated, and without identifying himself as a police officer, Officer Hall knocked on Mr. Sharp's window while shining a flashlight directly into the car. *Id* As Mr. Sharp opened the door, Officer Hall saw a legally-owned long gun and ran to his police cruiser. ¶ 18. Without warning, Officer Hall opened fire on Mr. Sharp even though Sharp did not attempt to raise or point the rifle at the officers or anyone else. ¶¶ 18, 19. Mr. Sharp did not pose an immediate threat of injury to anyone; he did not raise the gun or verbally threaten anyone; and the officers failed to warn that they were prepared to use lethal force. ¶¶ 19, 21. The officers had non-lethal weapons but chose not to use them. ¶ 22. Mr. Sharp sustained several fatal gunshot wounds. ¶ 24.

Plaintiff alleges that the City of Richmond failed to provide adequate training to Officer Hall and Doe Officers in critical areas such as detentions and arrests, tactical decision-making, the use of less-lethal force options, and the appropriate use of deadly force. ¶ 55. The City's training policies were insufficient to prepare officers for the usual and recurring situations they face, including encounters with non-threatening individuals like Mr. Sharp. ¶ 54. The City's failure to provide adequate constitutional training is alleged to constitute deliberate indifference to the rights of those with whom officers come into contact and is claimed to be the moving force behind the constitutional violations that occurred. ¶ 56.

Plaintiff further alleges that Officer Hall and Doe Officers acted pursuant to official City policies or longstanding customs when they used deadly force against Mr. Sharp. ¶ 62. The complaint identifies numerous unconstitutional practices allegedly maintained by the City,

---

[2] All citations to paragraphs (¶ or ¶¶) below refer to the Complaint, Dkt. No. 1.

including the use of excessive force, failure to provide adequate training, hiring and retaining officers with known propensities for misconduct, and grossly inadequate supervision and discipline of officers. ¶ 64(a)–(f). Additional allegations include the City's practice of deeming unjustified shootings to be "within policy," failing to discipline officers even when courts find their conduct unconstitutional, and maintaining a code of silence that discourages officers from reporting misconduct. ¶ 64(g)–(i). Plaintiff also claims the City has shown deliberate indifference to the rising number of police shootings, refusing to retrain or hold officers accountable. ¶ 64(j). These customs and policies are alleged to be affirmatively linked to and a significant cause of Mr. Sharp's death. ¶¶ 65–66.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8, which "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 requires the plaintiff to make only (1) a short and plain statement of the court's jurisdiction, (2) a short and plain statement of the claim showing that the plaintiff is entitled to relief, and (3) a demand for judgment and relief. *Davis v. Passman*, 442 U.S. 228 (1979). Under federal notice pleading, the complaint must allege "enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 563. In deciding whether a pleading states a plausible claim for relief, the court considers the complaint's factual allegations "together with all reasonable inferences" from those allegations. *Richards v. C.I.A.*, 837 F. Supp. 2d 574, 575 (E.D. Va. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 663.

Further, under federal notice pleading, courts are liberal in construing complaints in favor of plaintiffs, and allegations of material fact are taken as true and construed in the light most favorable to the pleader. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).

Civil rights actions are governed by the pleading requirements of Federal Rules of Civil Procedure 8. *See Swierkiewicz v. Sorema N.A.*, 434 U.S. 506 (2002). There is no heightened pleading requirement for civil rights cases, and the United States Supreme Court has repeatedly rejected attempts by the Courts of Appeal to impose heightened pleading requirements in civil rights cases. *Id.*; *Leatherman v. Tarrant Cnty.*, 507 U.S. 163 (1993). To assert a claim under 42 U.S.C. § 1983, a plaintiff has an obligation to put the defendants and the Court on notice of what claims are raised in his or her complaint by properly alleging that she has been deprived a federal statutory or constitutional right by a person acting under color of state or local law. *Paratt v. Taylor*, 451 U.S. 527, 535 (1981).

## III.    ARGUMENT

Taking the facts and all reasonable inferences in the light most favorable to Plaintiff, Defendant City is liable for their unconstitutional custom, practice, and policy, and failure to train.

Municipalities and local government entities may be held liable under 42 U.S.C. § 1983 when the municipality itself caused the violation through "a deliberate choice to follow a course of action" from among various alternatives, made by governmental policymakers. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). A policy or custom for which a municipality may be held liable under § 1983 can be shown in four ways: (1) an express policy (such as a written ordinance or regulation); (2) an act or decision by an official with final policymaking authority; (3) a failure

by policymakers to properly train or supervise employees, reflecting a "deliberate indifference" to the rights of citizens; or (4) a persistent and widespread custom or practice that is so well-settled as to have the force of law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Here, Plaintiff's Complaint sufficiently alleges failure to adequately train (Claim IV, ¶¶ 51-59) and unconstitutional custom or policy (Claim V, ¶¶ 60-69). These detailed allegations, spanning several pages, are more than enough to meet the standard set forth in *Iqbal*, 556 U.S. at 677-80, as they are sufficient to give Defendant City fair notice of the claims and to raise a reasonable inference that its policies and failures to train were a cause of Plaintiff's injuries.

### A.    Failure to Train (Claim IV)

Municipal liability attaches by demonstrating that the alleged constitutional violation was caused by a failure to train municipal employees adequately. *Canton*, 489 U.S. at 388-91; *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011). An unconstitutional failure to train can be shown by alleging a failure to train "employees concerning an obvious constitutional duty that the particular employees are certain to face." *Moody v. City of Newport News, Va*., 93 F. Supp. 3d 516, 538 (E.D. Va. 2015) (internal citations and quotations omitted.)

Plaintiff alleges that the defendant officers were not adequately trained in key areas, including detentions and arrests, tactical approaches, the use of less-lethal options, and the use of deadly force—particularly in determining whether such force is reasonable and appropriate under the circumstances. ¶ 55. Plaintiff further asserts that the City failed to train its officers to handle "usual and recurring situations." ¶ 54.

In this case, the officers are alleged to have approached a young man sleeping in his car, awakened him, and then shot him upon seeing that he possessed a firearm. ¶¶ 16-18. Possessing a firearm is legal in Virginia, and it is not uncommon for officers to encounter individuals who are

armed. A non-threatening person has the right to be free from the use of deadly force, and it is clear that "an officer does not possess the unfettered authority to shoot a member of the public simply because that person is carrying a weapon." *Cooper v. Sheehan*, 735 F.3d 153, 169 (4th Cir. 2013).

The City's failure to train its officers on how to safely and constitutionally approach, detain, or arrest (if justified) armed individuals amounts to a failure to prepare them for a recurring and foreseeable scenario—particularly in a country where firearm possession is constitutionally protected.

The need for better training in this area is obvious. Police officers are armed and will inevitably face situations involving people with weapons who are not actively threatening anyone. The Supreme Court's *Canton* decision gave a now-famous illustration directly on point: "[c]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms . . . Thus, the need to train officers in the constitutional limitations on the use of deadly force is so obvious that failure to do so could properly be characterized as deliberate indifference." *Canton*, 489 U.S. at 390 & n.10.

Additionally, the officers are alleged to have escalated to deadly force despite the availability of non-lethal alternatives. ¶ 22. The City's failure to train officers in the proper use of non-lethal force represents another clear deficiency, as officers must be equipped to respond appropriately in situations where some force is necessary but deadly force is not.

Defendant contends that Plaintiff has not identified the exact shortcomings in the City's training program or has done so only in general terms. But at the pleading stage, a plaintiff cannot be expected to already know the internal training protocols of a police department before discovery. It is enough that Plaintiff has alleged the end result (officers engaging in

unconstitutional conduct) and a plausible link to a failure in training on the topics relevant to that result. Plaintiff need not include particular training manuals or procedures in her Complaint to state a claim, especially where such materials would be within the City's possession. Rather, the Court considers whether the facts alleged, if true, make it plausible that the training was inadequate and city policymakers were deliberately indifferent to that inadequacy. That standard is met here.

Plaintiff's allegations go beyond a bare assertion of "failure to train." She cites specific topics (use of force, less-lethal options, dealing with arrests and detentions) and specifically alleges the City's training on those was inadequate. ¶¶54-56. Defendants argue that it is not enough to allege inadequate training, but that training must be non-existent; however, the Supreme Court's own description of this cause of action specifically explains that the issue is "whether that training program is adequate." *Canton*, 489 U.S. at 390.

To the extent Defendant argues Plaintiff needed to cite prior specific incidents to show a pattern, that misstates the law and the pleading requirements. A pattern is one method of proof, but not the exclusive route at the pleading stage. Plaintiff has sufficiently pled an "obvious need" theory, which does not demand a catalogue of prior constitutional violations.[3]

The Complaint also adequately pleads that the lack of training was the moving force behind Mr. Sharp's death. *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (causation requires "a direct causal link between municipal policy and the constitutional injury"). Plaintiff explicitly alleges that the City's failure to train its officers "caused" the use of excessive deadly

---

[3] Plaintiff has also alleged deliberate indifference based on prior incidents showing that City officials knew or should have known better training was needed. Similar shootings had occurred, and the City routinely labeled them within policy regardless of legality. If policymakers knew officers had used excessive force and failed to act, that suffices to allege deliberate indifference. Whether through the obvious need for training or notice from past events, Plaintiff has adequately pled this element.

force against Mr. Sharp ¶ 56. Moreover, Mr. Sharp's shooting is exactly the sort of harm one would predict if officers are not trained how to properly approach and deal with a non-threatening individual who has a firearm. Without training, officers might panic or resort to force too quickly – which is what allegedly happened here when Officer Hall, chose to confront a peaceful non-threatening individual with a legal firearm, immediately retreated and opened fire without assessing the threat or issuing commands. Training in de-escalation and threat assessment would have averted this tragedy. Thus, it is plausible that the deficiencies in training "actually caused" the violation of Mr. Sharp's rights.

Moreover, the causation inquiry is a fact-intensive one ill-suited for resolution on a motion to dismiss. It is enough that Plaintiff has alleged facts from which a factfinder could infer causation. The direct line from inadequate training to Mr. Sharp's death is apparent in the allegations: lacking proper training, Officer Hall failed to follow practices that might have preserved life (warning, taking cover, using non-lethal methods, or avoiding the confrontation altogether since Mr. Sharp was asleep and posed no threat) and instead employed deadly force in an unconstitutional manner. ¶¶ 54-56. Had he been appropriately trained by the City, he would have handled the encounter differently. Nothing more is required at this stage.

Plaintiff has pleaded a facially plausible failure-to-train claim. She has identified specific training lapses, alleged deliberate indifference on the City's part to those lapses due to an obvious need for such training, and linked the deficiency to the injury suffered. This is all that is required at this phase. Therefore, Defendant's motion to dismiss Claim Four should be denied.

###    B.    Unconstitutional Custom or Policy (Claim V)

Plaintiff allegations, taken as true, plausibly suggest entitlement to relief under Claim V based on the City's unconstitutional custom, practice, or policy.

A custom or practice *Monell* claim is made by alleging either: (1) an express policy, such as an ordinance or regulation, (2) the affirmative decisions of policy makers, (3) omissions by such policy makers showing "manifest deliberate indifference to the rights of citizens," or (4) a custom that is "'so 'persistent and widespread' and 'so permanent and well settled as to constitute "custom or usage" with the force of law.'" *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (internal citations omitted). Even if there is not an explicit policy, a plaintiff may establish municipal liability upon a showing that there is a permanent and well-settled practice by the municipality which gave rise to the alleged constitutional violation. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

Plaintiff's Fifth Claim as currently pled in the Complaint asserts ten categories of specific municipal customs, policies, and/or practices. ¶ 64. As alleged, the City had expressly adopted, or maintained a longstanding practice or custom that directed, encouraged, allowed, and ratified officer's unconstitutional conduct. ¶¶ 65-66. Specifically, Plaintiff alleged Defendant City maintained a policy and custom of using and tolerating excessive force; making unlawful detentions and arrests; encouraging a code of silence; and not recommending criminal prosecution against officers who engage in unlawful conduct. ¶ 64. These customs, policies, and/or practices are directly tethered to the facts of this case. The alleged the policies, practices, and customs in the Complaint directly led to excessive force incidents such as Defendants' shooting of Mr. Sharp, making these City policies, practices, and customs unconstitutional and the moving force behind the officers' use of excessive force in this case.

Plaintiff has sufficiently alleged specific unconstitutional customs and policies in her complaint; Plaintiff is not required to plead a precise policy at this stage as it is rare for a plaintiff to have access to a precise policy or custom prior to engaging in discovery, and "requiring a

plaintiff to plead its existence in detail is likely to be no more than an exercise in educated guesswork." *Estate of Osuna*, 392 F.Supp.3d. 1162, 1174 (E.D. Cal. 2019).

Plaintiff has pleaded a facially plausible custom, practice, and policy claim. She has identified the specific training lapses, alleged deliberate indifference on the City's part to those lapses due to an obvious need for such policies, and linked the deficiency to the injury suffered. Therefore, Defendant's motion to dismiss Claim V should be denied.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff has adequately pled Claims IV and V for municipal liability. The Court should therefore deny Defendant's Rule 12(b)(6) motion to dismiss Counts IV and V of the Complaint.

Respectfully submitted,

/s/ Scott M. Perry
Scott M. Perry (VA # 67417)
Breit Biniazan, P.C.
1010 N. Glebe Road, Suite 310
Arlington, VA 22201
P: 703-291-6651
scott@bbtrial.com

LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo (SBN 144074) *pro hac vice pending*
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169) *pro hac vice pending*
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day April 2025, I electronically filed the foregoing using the CM/ECF system, which will serve this filing to all counsel of record.


        <u>/s/ Scott M. Perry         </u>